IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ERIKA NOEMI RAMOS VELASQUEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:26-cv-1701 (LMB/LRV) |
| | ) | |
| DAVID VENTURELLA, et al., | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

Petitioner Erika Noemi Ramos Velasquez ("Ramos Velasquez") a native and citizen of El Salvador, has filed a three-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which she asserts that she has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency since June 11, 2026. Specifically, she alleges that her characterization by DHS as an "applicant for admission" pursuant to 8 U.S.C. § 1225(a), thus subjecting her to mandatory detention under 8 U.S.C. § 1225(b)(2), violates the Immigration and Nationality Act (Count I); the implementing bond regulations at 8 C.F.R. §§ 236.1, 1236.1, and 1003.19 (Count II); and her due process rights (Count III).

Ramos Velasquez is currently detained at the Caroline Detention Center, which is within this Court's jurisdiction and the basis upon which she is suing Paul Perry, the warden of the Caroline Detention Center. Ramos Velasquez has also sued David Venturella, the Acting Director of ICE; Joseph Simon, the Field Office Director of the ICE Enforcement and Removal Operations Washington Field Office; Markwayne Mullin, the DHS Secretary; Todd Blanche, the Acting Attorney General; DHS; and the Executive Office for Immigration Review ("EOIR")

(collectively, "the federal respondents"). For the reasons discussed in this Order, the Court finds that Ramos Velasquez is detained pursuant to 8 U.S.C. § 1226(a). Accordingly, her Petition will be granted, and the federal respondents will be ordered to release her from custody and provide her with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a).

I.

According to her Petition, Ramos Velasquez entered the United States in March 2023 with her then-three-year-old daughter and has resided in the country ever since. [Dkt. No. 1] at ¶ 55. Before her current detention, Ramos Velasquez lived in Rockville, Maryland with her partner and her two daughters (six-years-old and 11-months old); her younger daughter is a U.S. citizen. Id. at ¶ 57. Upon entry into the United States, Ramos Velasquez was apprehended and detained by ICE officials. Id. at ¶ 56. Petitioner "had period[ic] ICE check-in appointments" and did "not miss[] any of them." Id. She also wore an ankle monitor at a certain point. Id. At her most recent ICE check-in appointment on June 11, 2026, Ramos Velasquez was apprehended and detained by ICE officials. Id.

Ramos Velasquez filed her Petition for Writ of Habeas Corpus on June 17, 2026. [Dkt. No. 1]. This Court subsequently entered an Order requiring that she not "be removed or transferred from this district for any reason without this Court's permission" and directing the federal respondents to "file either a Notice indicating that the factual and legal issues presented in this Petition do not differ in any material fashion from those presented in Ceba Cinta v. Noem, et al., 1:25-cv-1818 (E.D. Va.), or an Opposition to the Petition discussing the material differences between Ceba Cinta and this Petition." [Dkt. No. 2] at 1. In response, the federal respondents filed a Notice stating that "the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in Ceba Cinta" and

requesting that this Court "incorporate the filings in Ceba Cinta into the record of this habeas case." [Dkt. No. 4] at 1. Finding that oral argument will not aid the decisional process, the Petition will be resolved on the papers submitted.

II.

The central question posed in Ramos Velasquez's Petition is whether she is subject to mandatory detention under § 1225(b)(2) or instead subject to discretionary detention and entitled to a bond hearing under § 1226(a). As the federal respondents argued in their Ceba Cinta opposition—which has been incorporated into the record in this civil action—whether an individual is detained under § 1225(b) or § 1226(a) lies in the "distinction between aliens who are detained after a lawful admission into the U.S. and those who are present without a lawful admission." Ceba Cinta v. Noem, et al., 1:25-cv-1818, Dkt. No. 9 (E.D. Va. Oct. 28, 2025). According to the federal respondents, anyone in the United States who has not been admitted is subject to mandatory detention under § 1225(b), and § 1226(a) applies only to those who have been given legal status and subsequently placed into removal proceedings. Id. Therefore, they argue that because Ramos Velasquez has not been admitted "as a legal matter" into the United States, she is inadmissible under 8 U.S.C. § 1182(a), considered to be an applicant for admission under § 1225(a), and subject to mandatory detention under § 1225(b)(2). Id.

This argument reflects DHS's novel interpretation of decades-old immigration detention statutes that numerous district courts throughout the country have found[1] is contrary to DHS's

---

[1] The overwhelming majority of district courts to consider this issue have held that the detention scheme applicable to noncitizens already residing in the United States is 8 U.S.C. § 1226(a). See Barco Mercado v. Francis, 2025 WL 3295903, at *4 nn. 22–23 (S.D.N.Y. Nov. 26, 2025) (collecting hundreds of federal decisions holding that § 1226(a) is the applicable detention scheme for noncitizens already present in the United States); see also Kyle Cheney, Our Running List of Judges Who Have Ruled on ICE's Mass Detention Policy, POLITICO,

3

implementing regulations and published guidance, the decisions of its immigration judges (until

recently), longstanding practice in U.S. immigration law, the Supreme Court's interpretation of

the statutory scheme, and traditional tools of statutory construction.  See Romero v. Hyde, 2025

WL 2403827, at *9 (D. Mass. Aug. 19, 2025).  The Second Circuit considered the federal

respondents' position in Barbosa de Cunha v. Freden,[2] and a unanimous panel agreed with "the

overwhelming majority of federal judges across the Nation [who have] conclude[d] that the

government's novel interpretation of the immigration statutes defies their plain text," explaining

that the "text makes clear that Section 1226(a) governs detention of noncitizens like Petitioner"

and "Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United

States after entering the country without inspection and admission, and who were not

apprehended while entering the country or shortly thereafter."  2026 WL 1146044, at *2 (2d Cir.

Apr. 28, 2026); accord Hernandez Alvarez v. Warden, 2026 WL 1243395, at *13 (11th Cir. May

6, 2026); Lopez-Campos v. Raycraft, 2026 WL 1283891, at *3–7 (6th Cir. May 11, 2026).

Moreover, as the Second Circuit stated, "even if the government's newfound interpretation of

Section 1225(b)(2)(A) were plausible—and it is not—we would nonetheless reject it based on

our obligation to construe these statutes in a manner that would avoid the serious constitutional

questions attendant to what would be the broadest mass-detention-without-bond mandate in our

Nation's history for millions of noncitizens."  Barbosa de Cunha, 2026 WL 1146044, at *2.  The

Second and Eleventh Circuit's opinions are consistent with this Court's analysis of these

---

https://www.politico.com/news/2026/02/18/trump-judges-immigration-detention-00784614?_sp_pass_consent=true (last updated Apr. 28, 2026).

[2] The Petitioner in Barbosa de Cunha was a noncitizen from Brazil who had lived in the United States for more than 20 years after entering the country without inspection and admission.

4

detention statues as articulated in Hasan v. Crawford, 800 F. Supp. 3d 641 (E.D. Va. 2025), and the Court adopts the findings and conclusions in Hasan into this Order.

The Court recognizes that the Fifth and Eighth Circuits have reached contrary conclusions in two split decisions. Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026); Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026). Those decisions are not binding here, CASA de Md., Inc. v. Trump, 971 F.3d 220, 260 (4th Cir. 2020), and the Court is unpersuaded by the Fifth and Eighth Circuit's rationales for many of the reasons set forth in dissenting Judge Douglas's and Judge Erickson's strong dissents. Specifically, Judge Douglas correctly explained the federal respondents' interpretation risks rendering substantial portions of the statutory scheme superfluous and internally inconsistent. Buenrostro-Mendez, 166 F.4th at 511–13 (Douglas, J., dissenting). And Judge Erickson cogently observed that "[a]ll three branches of government" have understood the detention statutes to "maintain the distinction between unadmitted citizens in the interior and those arriving at the border for detention purposes." Avila, 170 F.4th at 1140 (Erickson, J., dissenting). "Five presidential administrations, including the first Trump administration, and most immigration judges interpreted § 1225 to apply only to those arriving at the border," "[s]everal courts" interpreted § 1225's reference to noncitizens "seeking admission" "as applying only to those seeking lawful entry at the border," and "Congress never attempted to correct the other two branches." Id. For these reasons, the Court finds the Fifth and Eighth Circuits' majority rulings unpersuasive.

Ramos Velasquez has been present in the United States since 2023. [Dkt. No. 1] at ¶ 55. Because § 1226(a) sets forth "the default rule" for detaining and removing noncitizens "already present in the United States," Jennings v. Rodriguez, 583 U.S. 281, 303 (2018), Ramos Velasquez's detention is governed by § 1226(a). See Abreu v. Crawford, 2025 WL 51475, at *3

(E.D. Va. Jan. 8, 2025) ("There is a statutory distinction between noncitizens who are detained upon arrival into the United States and those who are detained after they have already entered the country, legally or otherwise."). And under § 1226(a) and its implementing regulations, she is entitled to a bond hearing before an Immigration Judge, in which an Immigration Judge must determine whether she poses a danger to the community, and whether she is a flight risk. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1). Unless an Immigration Judge makes such a determination, Ramos Velasquez's continued detention is unlawful.

III.

For all these reasons, Ramos Velasquez's Petition, [Dkt. No. 1], is GRANTED, and it is hereby

ORDERED that Ramos Velasquez be promptly released from custody, with all herpersonal property, in order to appear at a bond hearing before an Immigration Judge; and it is further

ORDERED that Ramos Velasquez live at a fixed address which she must provide to the federal respondents[3]; and it is further

ORDERED that respondents provide Ramos Velasquez with an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within 14 days of the date of this Order; and it is further

ORDERED that respondents be and are ENJOINED from denying bond to Ramos Velasquez on the basis that she is detained pursuant to 8 U.S.C. § 1225(b)(2); and it is further

---

[3] If petitioner opts to file a pleading in this civil action notifying the federal respondents of her fixed address, petitioner should file that pleading under seal.

ORDERED that, if Ramos Velasquez is granted bond, respondents be and are ENJOINED from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2); and it is further

ORDERED that if Ramos Velasquez is released on bond, the federal respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Ramos Velasquez unless she (1) commits a violation of any federal, state, or local law; (2) fails to comply with the conditions of her release; (3) fails to attend a properly noticed immigration hearing; or (4) is detained pursuant to a valid, final order of removal.

The Clerk is directed to enter judgment in Ramos Velasquez's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

Entered this 25th day of June, 2026.

Alexandria, Virginia

_____ /s/

Leonie M. Brinkema
United States District Judge